# 23-476

## In the
## United States Court of Appeals
### For the Second Circuit

❖

CANDICE D'CUNHA,

*Plaintiff-Appellant,*

v.

NORTHWELL HEALTH SYSTEMS,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

LLOYD · LEMMON, PLLC
*Attorneys for Plaintiff-Appellant*
15 Chester Street
Front Royal, Virginia 22630
(540) 631-4081

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.....................................................................................ii

STATEMENT OF JURISDICTION .......................................................................1

STATEMENT OF THE ISSUES PRESENTED ..........................................................2

STATEMENT OF THE CASE.................................................................................2

RELEVANT BACKGROUND ..............................................................................3

SUMMARY OF ARGUMENT................................................................................6

ARGUMENT

      I.    Standard of Review.......................................................................8

      II.   Failure to Accommodate ..............................................................9

            a.  Prima facie case ...................................................................12

            b.  The burden shifts to the employer to show it could
               not accommodate the employees' religious beliefs
               without undue hardship ......................................................14

      III.  Pregnancy Discrimination ..............................................................18

      IV.  The Americans with Disabilities Act ..............................................20

CONCLUSION ...................................................................................................21

<u>**TABLE OF AUTHORITIES**</u>

**Page**

<u>**Cases:**</u>

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...................................... 9, 14

*Baker v. Home Depot,*
    445 F.3d 541 (2d Cir. 2006) .................................................................................. 16-17

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ........................................... 8

*Citizens United v. Schneiderman,*
    882 F.3d 374 (2d Cir. 2018) ..................................................................................... 19

*Cosme v. Henderson,*
    287 F.3d 152 (2d Cir. 2002) ............................................................................ 9, 10, 11

*Costin v. Glens Falls Hosp.,*
    No. 1:22-CV-00296 (MAD/CFH), 2023 U.S. Dist. LEXIS 25935
    (N.D.N.Y. Feb. 15, 2023) ........................................................................................ 20

*D'Cunha v. Northwell Health Sys.,*
    No. 1:22-cv-0988 (MKV), 2023 WL 2266520 (S.D.N.Y. Feb. 28, 2023) ................. 3

*Deravin v. Kerik,*
    335 F.3d 195 (2d Cir. 2003) ..................................................................................... 21

*EEOC v. Abercrombie & Fitch Stores, Inc.,*
    575 U.S. 768, 135 S. Ct. 2028, 2034 (2015) ............................................................ 10

*Evergreen E. Coop. v. Whole Foods Mkt., Inc.,*
    No. 21-2827-cv, 2023 U.S. App. LEXIS 2155, at (2d Cir. Jan. 27, 2023) ............... 8

*Fink v. Time Warner Cable,*
    714 F.3d 739 (2d Cir. 2013) ....................................................................................... 8

*Gordon v. MCI Telecomms. Corp.,*
    791 F. Supp. 431 (S.D.N.Y. 1992) .......................................................................... 12

*Henry v. County of Nassau,*
    6 F.4th 324 (2d Cir. 2021) ............................................................................. 8

*Hilton v. Wright,*
    673 F.3d 120 (2d Cir. 2012) .........................................................................20

*Keene v. City & Cty. of S.F.,*
    No. 22-16567 2023 U.S. App. LEXIS 11807 (9th Cir. May 15, 2023)...................12

*Knight v. Conn. Dep't of Pub. Health,*
    275 F.3d 156 (2d Cir. 2001) ..................................................................... 10, 11

*Legg v. Ulster Cty.,*
    820 F.3d 67 (2d Cir. 2016)........................................................................ 18, 19

*Littlejohn v. City of N.Y.,*
    795 F.3d 297 (2d Cir. 2015) ..........................................................................13

*May Flower In t'l, Inc. v. Tristar Food Wholesale Co. Inc.,*
    No. 21CV02891RPKPK, 2022 WL 4539577 (E.D.N.Y. Sept. 28, 2022)...............19

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792, 93 S. Ct. 1817 (1973) ...................................................... 19-20

*Nat'l Rifle Ass'n of Am. v. Vullo,*
    49 F.4th 700 (2d Cir. 2022) ............................................................................9

*Newport News Shipbuilding & Dry Dock Co. v. EEOC,*
    462 U.S. 669, 103 S. Ct. 2622 (1983) ..........................................................18

*Powell v. McCormack,*
    395 U.S. 486 (1969) ........................................................................................1

*Trans World Airlines, Inc. v. Hardison,*
    432 U.S. 63 (1977) .........................................................................................10

*TWA v. Hardison,*
    432 U.S. 63, 97 S. Ct. 2264 (1977)................................................................17
*US. v. Zimmerman,*
    514 F.3d 851 (9th Cir. 2007) .........................................................................10

*Vega v. Hempstead Union Free Sch. Dist.,*
    801 F.3d 72 (2d Cir. 2015)..................................................17

*We the Patriots USA, Inc. v. Hochul,*
    17 F.4th 266 (2d Cir. 2021) ......................................... 15, 16

*Williams v. N.Y.C. Hous. Auth.,*
    458 F.3d 67 (2d Cir. 2006)..................................................21

## **Rules, Laws and Statutes:**

28 U.S.C. § 1291 ......................................................................1

28 U.S.C. § 1391 ......................................................................1

28 U.S.C. § 2201 ......................................................................1

28 U.S.C. § 2202 ......................................................................1

28 U.S.C. § 1331 ......................................................................1

28 U.S.C. §§ 1343 ....................................................................1

42 U.S.C. § 12101 ............................................................... 1, 20

42 U.S.C. § 2000e ........................................................... 1, 9, 18

42 U.S.C. § 2000e-2 ................................................................9

42 U.S.C. §12102(1)(c) .........................................................20

Civil Rights Act of 1964, Title VII ................................ 1, 2, 8, 9

FRCP 12(b)(6)......................................................................2, 7

Section 703(a)(1) ....................................................................9

## STATEMENT OF JURISDICTION

This Court has subject matter jurisdiction over this case pursuant to the civil enforcement provisions of the Pregnancy Discrimination Act and the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Americans with Disabilities Act, 42 U.S.C. § 12101.

This Court also has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343(a)(3)-(4) because this action arises under the laws of the United States.

Venue for this action properly lies in the Southern District of New York pursuant to 28 U.S.C. § 1391, because a substantial part of the events, actions, or omissions giving rise to the claim occurred in that judicial district, where Northwell Health Systems Staten Island Staten Island University Hospital is principally located.

The District Court also has subject matter jurisdiction to issue declaratory relief pursuant to 28 U.S.C. § 2201: "[f]urther necessary or proper relief based on a declaratory judgment may [also] be granted ...," including via injunction. *See Powell v. McCormack*, 395 U.S. 486, 499 (1969) ("A declaratory judgment can then be used as a predicate to further relief, including an injunction. 28 U.S.C. § 2202 ....").

This Court has appellate jurisdiction under 28 U.S.C. § 1291. The District Court issued a final order granting the Defendant's motion to dismiss on February 28, 2023, and disposing of all of Plaintiff-Appellant's claims. She filed a timely appeal on March 30, 2023, pursuant to Fed. R. App. P. 4(a)(1)(A).

**STATEMENT OF THE ISSUES PRESENTED**

Whether the District Court erred in dismissing Plaintiff's claims against Northwell pursuant to FRCP 12(b)(6) because of a failure to state a claim:

a. Whether Plaintiff alleged the elements of a failure to accommodate (religion) claim under Title VII of the Civil Rights Act of 1964.

    i. Whether the District Court applied the proper standard for Plaintiff's failure to accommodate (religion) claim.

b. Whether the Plaintiff alleged a colorable claim of discrimination under the Pregnancy Discrimination Act of 1978.

c. Whether Plaintiff alleged a colorable claim of "regarded as" discrimination under the Americans with Disabilities Act.

    i. Whether Plaintiff exhausted her administrative remedies regarding this claim.

**STATEMENT OF THE CASE**

This case challenges the decision of Northwell Health System to fire one of its employees, Dr. Candice D'Cunha, who was pregnant at the time, after she refused to take the COVID-19. JA 37-48. She had submitted requests for religious accommodation and medical exemption, both of which Northwell denied. JA 17-32. The suit alleges violations of Title VII of the Civil Rights Act of 1964, the Pregnancy Discrimination Act of 1978, and the Americans with Disabilities Act.

After receiving a right to sue from the Equal Opportunity Commission

2

(Charge No. 520-2022-00721) on November 5, 2021(JA-154), Dr. D'Cunha initiated this litigation in the Southern District of New York on February 3, 2022, which she amended by right on February 24, 2022. JA-143. Northwell filed a motion to dismiss on June 7, 2022, which Dr. D'Cunha opposed.

On February 28, 2023, Judge Mary Kay Vyskocil entered an opinion and order granting the motion. *D'Cunha v. Northwell Health Sys.*, No. 1:22-cv-0988 (MKV), 2023 WL 2266520 (S.D.N.Y. Feb. 28, 2023). JA 163-174. Dr. D'Cunha appealed on March 30, 2023. JA-185.

## RELEVANT BACKGROUND

Dr. Candice D'Cunha lived in New York City upon arriving in the United States in August of 2008. She received an education there and worked her way into medical school at Kent State University College of Podiatric Medicine.

During medical school at Kent State, she accepted an offer of an externship at Staten Island University Hospital ("SIUH" or "SIUH Northwell") and worked there in August of 2019.

Dr. D'Cunha then interviewed for her residency at SIUH in January of 2020, and applied in February 2020. SIUH Northwell informed Dr. D'Cunha that she matched for a residency in March 2020.

Dr. D'Cunha graduated in May of 2020 and began her residency at SIUH Northwell in June of 2020. She progressed nicely throughout her residency and received good reviews. Dr. D'Cunha was pregnant when she began her residency and

gave birth to her daughter in October of 2020.

In February of 2021, Dr. D'Cunha started experiencing symptoms consistent with COVID-19, which a positive test confirmed. As a result, Dr. D'Cunha missed roughly ten days of work while she recovered in the February-March 2021 timeframe. She had vertigo symptoms that continued for an additional six weeks.

On August 2, 2021, SIUH Northwell announced a mandate that its employees must receive a COVID-19 vaccine or receive a religious or medical exemption by September 27, 2021, or face termination. Northwell never published any criteria by which it would grant religious exemptions to its mandate, and it never published any criteria by which it would grant medical exemptions.

Dr. D'Cunha timely submitted a request for a religious accommodation on Northwell's "Religious Accommodation Request Form," in which she signed a statement accepting Northwell's language, which stated, "I am requesting an accommodation in the form of an exemption from the NYS COVID-19 vaccination requirement because I have a genuine and sincere religious belief contrary to the practice of immunization," to which she added in her own handwriting, "when the producers of the vaccines used for that immunization use tissue, cells, DNA or other organic materials derived from aborted fetuses in the research, development and / or production of that vaccine." She added further,

> I understand all of the foregoing to reference and to be in accord with
> current state and federal law regarding discrimination on the basis of
> religion, and reasonable accommodation of religious practice in the

4

workplace. I do not, by signing this document…agree to waive any protection against discrimination in the workplace on the basis of religious belief…nor do I waive any guarantee of…reasonable accommodation or any other protection afforded to me under the law. JA-17.

The next day, Northwell verbally informed Dr. D'Cunha that they were no longer accepting any religious exemption requests.

Dr. D'Cunha then submitted a timely request for a medical exemption, which included a note from her treating obstetrician, a Northwell doctor, requesting a delay in administration of the vaccine until after delivery of her baby. It also included lab work that indicated that she had COVID-19 antibodies in the highest detectable range. JA-21. Northwell denied the medical exemption request, and Dr. D'Cunha appealed. JA-32 Her appeal of the medical exemption request was also unsuccessful.

On September 30, 2021, Kate Rafla, Northwell Director of Operations at SIUH, contacted Dr. D'Cunha to inform her that Northwell could not locate her request for religious exemption. Dr. D'Cunha re-submitted her request for religious exemption the same day.

On October 1, 2021, Northwell informed Dr. D'Cunha that it had rejected her request for religious exemption. The rejection stated in relevant part:

> [I]n an effort to provide clarity to you while we await the court's final determination and in an effort to address its operational concerns…In accord with the principles that would apply should such religious exemptions be permitted, we nevertheless have determined that your religious exemption request must be denied as it would create an undue hardship. JA-35.

On October 1, 2021, while she was seeing patients, Northwell summoned Dr. D'Cunha and hand-delivered her a letter of termination back-dated to September 28. Northwell adjusted its approach later that same day, informing her that she was entitled to a delayed termination date and an appeal process. JA-37.

On October 8, Northwell provided Dr. D'Cunha with a second termination letter stating that October 7 had been her last day of work. JA-48.

Dr. D'Cunha requested an appeal, and on November 22, 2021, participated in an internal hearing of Northwell's Adverse Action Review Committee that Northwell conducted to review its termination. In the internal appeal that Northwell conducted, the testimony clearly indicated that it did not conduct an independent analysis of Dr. D'Cunha's situation. JA-49.

On Christmas Eve, 2021, Northwell delivered to Dr. D'Cunha the decision of the Adverse Action Review Committee that it stood by its decision to terminate her. JA-143.

## SUMMARY OF ARGUMENT

Northwell Health Systems fired Dr. Candice D'Cunha, who was pregnant at the time, because she would not take the COVID-19 vaccine, which would have been a violation of her religious beliefs. In doing so, it did not make an assessment as to any threat that she as an individual may have posed to Northwell or its patients. In reality, she had already had COVID-19 and had received confirmation that her antibodies were at the maximum level they could be, so the vaccine was not only

6

unnecessary, there was some evidence that it could be harmful. As a pregnant doctor, this troubled Dr. D'Cunha, and she communicated this clearly to Northwell. Her own obstetrician, who was also a Northwell physician, requested in writing that her vaccine requirement be delayed until after delivery.

She tried to avoid this outcome by participating in Northwell's process for obtaining a religious accommodation and a medical exemption. In doing so, as with the medical exemption request, she had hoped that she would have been able to work out a mutually agreeable arrangement, but Northwell made no attempt to communicate any possibilities or alternatives; it simply determined that it would not grant her religious accommodation or medical exemption requests and fired her.

Northwell premised its vaccination requirement on a presumption that Dr. D'Cunha was or would be a carrier of COVID-19, or that she did not have sufficient immunity against COVID-19, which was factually incorrect, and, under ADA "regarded as" precedent, is an unlawful assumption.

The District Court did not apply the proper 12(b)(6) analysis in that it accepted the Defendant's factual assertions without inquiry, when they were the very thing Dr. D'Cunha seeks to challenge on the merits. Although Northwell intoned terms such as "health and safety threat" to *assert* that an accommodation of Dr. D'Cunha's religious beliefs would cause an undue hardship for it, it never brought any information to bear

7

to *establish* that assertion, and the District Court never required this of them.

The District Court also applied the wrong legal standard for a complaint alleging failure to accommodate religious belief, and it mischaracterized Dr. D'Cunha's request for religious accommodation, applying that mischaracterization in a manner detrimental to the outcome of its analysis, among other errors.

Altogether, Dr. D'Cunha's pleadings clearly indicate that, in firing her, Northwell violated Title VII of the Civil Rights Act of 1964 (religious discrimination), the Pregnancy Discrimination Act of 1978 (sex discrimination), and the Americans with Disabilities Act. The District Court erred in granting the Motion to Dismiss in this case; it should proceed to a full hearing on the merits.

## ARGUMENT

### I. Standard of Review

Appellate Courts "review a district court's grant of a motion to dismiss *de novo*, 'accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor.'" *Evergreen E. Coop. v. Whole Foods Mkt., Inc.*, No. 21-2827-cv, 2023 U.S. App. LEXIS 2155, at *3-4 (2d Cir. Jan. 27, 2023), quoting *Henry v. County of Nassau*, 6 F.4th 324, 328 (2d Cir. 2021) and *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.*, quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim is plausibly alleged

8

'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.*, quoting *Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700, 713 (2d Cir. 2022) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

## II. Failure to Accommodate

The standard for Title VII religious discrimination on the basis of a failure to accommodate in the Second Circuit and beyond is as follows:

> Section 703(a)(1) of the Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e-2(a)(1) (1994), makes it an unlawful employment practice for an employer to discriminate against an employee on account of his or her religion. The broad aim of Title VII is to eliminate discrimination in employment, that is, employees who are similarly situated are not to be treated differently simply because they differ from one another with regard to their religious beliefs or practices. More specifically, Title VII's provisions make it an unlawful employment practice to discriminate against any employee "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion," *id.*, or to "limit, segregate or classify" an employee in a way that would "adversely affect his status as an employee," because of that employee's "religion." 42 U.S.C. § 2000e-2(a)(2), § 703(a)(2).

*Cosme v. Henderson*, 287 F.3d 152, 157 (2d Cir. 2002).

The statutory definition of "religion" includes:

> All aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."

42 U.S.C. § 2000e(j).

9

As the Supreme Court noted:

> The intent and effect of this definition was to make it an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees.

*Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

A belief "can be religious even if it is not acceptable, logical, consistent, or comprehensible to others." *US. v. Zimmerman*, 514 F.3d 851 (9th Cir. 2007).

The Supreme Court has made clear the deference that is required in cases of religious freedom:

> Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. Rather, it gives them favored treatment, affirmatively obligating employers not "to fail or refuse to hire or discharge any individual . . . because of such individual's" "religious observance and practice." [...] when an applicant requires an accommodation as an "aspec[t] of religious . . . practice," it is no response that the subsequent "fail[ure] . . . to hire" was due to an otherwise-neutral policy. Title VII requires otherwise-neutral policies to give way to the need for an accommodation.

*EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775, 135 S. Ct. 2028, 2034 (2015)

The Second Circuit, naturally, takes the same approach: "when an employee has a genuine religious practice that conflicts with a requirement of employment, his or her employer, once notified, must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship. *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002)[quoting *Knight v.*

10

*Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)].

As the Second Circuit has long held, a Plaintiff claiming a failure to accommodate must first make out a *prima facie* case of religious discrimination by showing, (1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement. *Knight v. State Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001).

From there, "if the employees establish a prima facie case, **the burden then shifts to the employer to show it could not accommodate the employees' religious beliefs without undue hardship**." *Id.* (emphasis added, citation omitted).

In formulating such an accommodation, both the employer and employee should remain flexible, with an eye toward achieving a mutually acceptable adjustment. Nevertheless, to avoid Title VII liability, the employer need not offer the accommodation the employee prefers. Instead, when any reasonable accommodation is provided, the statutory inquiry ends. *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002)(internal citations omitted).

Furthermore, courts throughout the Second Circuit, the Southern District of New York among them, have taken the approach, originating in the Ninth Circuit, that the question of whether a religious belief imposes an undue hardship turns on an independent inquiry of the facts of a particular case:

Whether accommodating an employee's religious practices would cause

11

an employer undue hardship must be determined based on the particular factual context of each case. An employer must present evidence of actual undue hardship and may not rely on speculation or 'hypothetical hardship.' While it is 'conceivable' that an employer could carry its burden of proving undue hardship where no attempts were made at accommodation, 'such situations will also be rare.' *Gordon v. MCI Telecomms. Corp.*, 791 F. Supp. 431, 436 (S.D.N.Y. 1992)(citations omitted).

Although it is well established, the District Court failed to apply, and Northwell failed to meet, this legal standard for religious accommodation in the workplace.

### a. Prima facie case

Dr. D'Cunha could not take the COVID-19 vaccine because of her religious beliefs. She established this in her request for religious accommodation, and by virtue of the fact that she accepted termination from a budding career rather than abandon those beliefs.

Northwell has not attempted to assert that Dr. D'Cunha's religious beliefs preventing her from taking the vaccine are not sincere, and it has indicated that it believes that they are. *See, e.g.*, JA-117-118. She informed Northwell using the document that Northwell provided for that purpose. Both parties agree that the vaccination requirement conflicted with her sincere religious beliefs. Both parties agree that, when faced with the Hobson's choice, "lose your faith and keep your job, or keep your faith and lose your job," *Keene v. City & Cty. of S.F.*, No. 22-16567 at*6, 2023 U.S. App. LEXIS 11807 (9th Cir. May 15, 2023), Dr. D'Cunha chose her faith,

and Northwell fired her. She has clearly made out a prima facie case of discrimination.

The District Court did not apply the standard for a *prima facie* case that is familiar to religious accommodation claims. Instead, it begins its religious accommodation analysis by asserting that Dr. D'Cunha "fails to allege facts giving rise to an inference of discrimination," citing the lack of Northwell's use of "degrading terms" and "invidious comments." Opinion, JA-166 (citation omitted). The citation it provides for such language comes entirely from a subsection entitled, "Littlejohn's Disparate Treatment Allegations." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 312 (2d Cir. 2015).

The District Court does not connect this reasoning to a failure to accommodate analysis, so the implication appears to be that, if Dr. D'Cunha has not pleaded facts supporting a disparate treatment claim, there can be no finding of discrimination according to a failure to accommodate theory of discrimination. This is not the law. As stated above, the threshold analysis for a failure to accommodate claim is a three-part inquiry that asks whether the complainant held a bona fide religious belief conflicting with an employment requirement; whether she informed her employers of this belief; and whether she was disciplined for failure to comply with the conflicting employment requirement. Dr. D'Cunha clearly has met these elements.

13

### b. The burden shifts to the employer to show it could not accommodate the employees' religious beliefs without undue hardship

Northwell has not "shown" that it could not accommodate Dr. D'Cunha's religious belief, it has only asserted this. Northwell furthermore did not conduct an analysis according to the "particular factual context of [this] case," as has been the Southern District's approach in the past.

Northwell's letter declining her religious accommodation stated its determination that she would be a risk to patients without offering any support for that conclusion. Nothing in the record supports a finding that it did any more. The alleged hardship remains a hypothetical, particularly in light of the special circumstances of Dr. D'Cunha's case, including but not limited to her proven immunity and the fact that she had been seeing patients up until the moment Northwell handed her termination letter to her.

The District Court in its opinion accepted Northwell's assertion that "reporting unvaccinated to a 'worksite [providing] direct patient care' posed 'an unacceptable health and safety threat to patients, co-workers, and visitors,'" concluding that it is 'more than a de minimis cost.'" Opinion, JA-167 (citations omitted). This is an inversion of the 12(b)(6) standard which "must accept as true all of the allegations contained in a complaint" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

Instead, the facts as Dr. D'Cunha pleaded them include allegations that

14

Northwell never made an independent determination that Dr. D'Cunha posed an increased threat to any of her patients or co-workers as a result of not having taken the COVID-19 vaccine. Complaint, JA-12. Such an approach, which reaches a legal conclusion based on generalized statements about the entire workforce without taking into consideration the independent facts of the case, is at odds with the Southern District's approach in *Grimes, supra.*

The District Court's opinion also contains a factual error that seems to have had consequences for its legal analysis. It states, "Here, the only accommodation D'Cunha requested was a vaccine exemption." This is incorrect.

Dr. D'Cunha filled out the form that Northwell provided. That document was entitled, "COVID-19 Vaccination—Religious **Accommodation** Request Form." JA-17 (emphasis added). That form went on to state, "I am requesting an accommodation in the form of an exemption from the NYS COVID-19 vaccine requirement…" The document later switches between the terms "accommodation" and "exemption" a number of times, although it tends to use the former. The more accurate characterization, then, is that an exemption is the only thing that Northwell was holding out as a possible accommodation. The pleadings bear the interpretation that both Northwell and especially Dr. D'Cunha were not, in using those terms, intending to have the technical legal meaning that the Second Circuit afforded the terms in *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 292 (2d Cir. 2021). They especially do not bear the interpretation that Dr. D'Cunha was insisting on a specific

type of accommodation.

The District Court goes on to mischaracterize *We the Patriots*, stating that the case "foreclosed" the possibility of a COVID-19 vaccine exemption for Dr. D'Cunha. Instead, *We the Patriots* dealt with a group of healthcare workers seeking a blanket vaccine exemption, in the context of a request for a preliminary injunction. The Court took issue with the particularity of the demand and spoke about an alternate possibility of "an accommodation allowing [workers objecting to the vaccine on religious grounds] to continue working consistent with the Rule, while avoiding the vaccination requirement." *Id.* Ultimately, the Court's analysis turned on whether Title VII required the employer to provide the accommodation that the Plaintiff *preferred*, as opposed to another one that is reasonable. *Id.*

Here, much to the contrary, Dr. D'Cunha was not insisting on a single course of action. She did not accept or reject one option or another because Northwell did not provide the option of telework or any other options. There were no alternative offers and there was no dialogue about what might be mutually acceptable.

As for the question of whether Dr. D'Cunha's continued employment would create a *de minimis* cost, the District Court is conclusory and brings no information to bear on how it determined that her employment would constitute more than a *de minimis* cost.

The Court's conclusion also does not fit within the authority that its cites to introduce the "de minimis" concept. *Baker v. Home Depot*, 445 F.3d 541, 543 (2d Cir.

2006), is an appeal of a summary judgment finding in favor the employer. In the opinion, the Second Circuit vacates the judgment, finding that the employer's offer of reasonable accommodation could not be reasonable, because it did not actually accommodate his religious belief (to refrain from work on Sunday). *Id.*

Baker cites *TWA v. Hardison*, 432 U.S. 63, 69, 97 S. Ct. 2264, 2269 (1977). In that case, in order to accommodate an employee's request *not* to work on Saturdays, TWA would have had to overhaul its seniority system to allow him the Saturday-off option.

Here, Northwell offered no accommodations, and would have only had to allow Dr. D'Cunha to continue working on October 8 (and beyond) in the same manner it had on October 7. Dr. D'Cunha had proven that she had immunity and was seeing patients up to the time that Northwell handed her its termination letter. The conclusion that accommodating Dr. D'Cunha would be more than a *de minimis* cost to Northwell is a leap that the facts do not bear.

Lastly, as part of an analysis it imports from another disparate treatment case [*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82 (2d Cir. 2015)("In 1973, the Supreme Court adopted a three-stage, burden-shifting framework for analyzing employment discrimination cases under Title VII where a plaintiff alleges **disparate treatment** but does not have direct evidence of discrimination.")(emphasis added).], the District Court claims that Dr. D'Cunha was not qualified for her position because COVID-19 vaccination was a condition of her employment, and she had not received

17

the COVID-19 vaccination. Opinion, JA-166. This was the point of her religious accommodation request—to avoid a mandate to meet a requirement that she could not meet because of her religious beliefs. The District Court's reasoning, if it were the rule, would end every religious accommodation claim before it began, as the reason such claims exist in the first place is that an employer is imposing a qualification upon an employee that the employee cannot meet because of his or her religious beliefs.

## III.    Pregnancy Discrimination

An employer cannot discriminate on the basis of sex, the definition of which includes pregnancy, childbirth, or related medical conditions. 42 U.S.C. § 2000e(k). "This provision makes clear that it is discriminatory to treat pregnancy-related conditions less favorably than other medical conditions." *Legg v. Ulster Cty.*, 820 F.3d 67, 72 (2d Cir. 2016)[citing *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 103 S. Ct. 2622 (1983)].

Here, Dr. D'Cunha requested, with the advice and written support of her obstetrician, a delay in the vaccine requirement until after her pregnancy. Her condition, then, was that of a woman requesting a delay in vaccination to protect her pregnancy. Nortwell denied that request and instead fired her.

This is in contrast to how it treated other medical conditions. While Dr. D'Cunha did not plead any direct knowledge of other accommodations, a fair assumption is that Northwell did not go to the trouble of accepting medical exemption request unless it planned on granting some. Dr. D'Cunha has not

had the benefit of discovery, but her pleadings regarding the medical accommodations granted to others, although based upon information and belief, are supported by "factual information that makes the inference of culpability plausible," *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018) (citation omitted), and "supported by some factual allegations making them plausible." *May Flower In t'l, Inc. v. Tristar Food Wholesale Co. Inc.*, No. 21CV02891RPKPK, 2022 WL 4539577, at *4 (E.D.N.Y. Sept. 28, 2022). They include exhibits demonstrating Northwell's medical exemption process and discussions of how Northwell implemented that policy, at least in part.

The District Court states that Dr. D'Cunha's pleadings alleging some pregnancy accommodations within the Northwell System undermines her claim of pregnancy discrimination. This is not so central to the theory of liability as the idea that Northwell treated her pregnancy-related condition less favorably than it treated other conditions. Dr. D'Cunha believes this to be the case, and has brought the information she has available to her to bear on the issue.

As for the rest of the analysis, "[l]ike other Title VII discrimination claims, pregnancy discrimination may be proven under a disparate treatment or disparate impact theory of liability." *Legg v. Ulster Cty.*, 820 F.3d 67, 72 (2d Cir. 2016). Under the *McDonnell Douglas* burden-shifting framework, Dr. D'Cunha is 1) part of a protected class 2) she was qualified for her job, 3) Northwell fired her, despite her qualifications, and 4) after her firing, her position remained open and Northwell continued to seek applicants from persons with her qualifications. *See, McDonnell Douglas Corp. v. Green*,

19

411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973).

## IV.    The Americans with Disabilities Act

The Americans with Disabilities Act, 42 U.S.C. 12101 prohibits discrimination on the basis of disability. These protections include situations when the employee is "regarded as having such an impairment." 42 U.S.C. §12102(1)(c).

Courts in the Second Circuit have found that this provision covers circumstances where an individual was perceived to be using cocaine [*Costin v. Glens Falls Hosp.*, No. 1:22-CV-00296 (MAD/CFH), 2023 U.S. Dist. LEXIS 25935, at *21 (N.D.N.Y. Feb. 15, 2023)], and where an employer perceived its employee to have a drug addiction. *Hilton v. Wright*, 673 F.3d 120, 129 (2d Cir. 2012), among others.

Northwell perceived Dr. D'Cunha to be disabled in that it assumed that she was not able to fight off COVID-19 without vaccination. It insisted that she needed a vaccination to be able to continue to work there, despite the fact that she had "[A]ntibodies in the highest range…" The fact of the vaccine requirement is the fact pattern that indicates Northwell's perception that Dr. D'Cunha had a disability, in that it treated her as though she had an immune system that could not support her continued employment without vaccination.

The District Court found that Dr. D'Cunha did not exhaust her administrative remedies when she did not check the disability box on her original EEOC filing. However, if "conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was

20

made[,]" the administrative exhaustion requirement is met. *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (citation omitted). To determine whether such "new" claims would have "fall[en] within the scope" of the EEOC's investigation into the claimant's prior claim(s), "the focus should be on the factual allegations made in the [EEOC] charge itself," *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (internal quotation marks and citation omitted), and "whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'" *Williams*, 458 F.3d at 70 (citation omitted).

Dr. D'Cunha's reference to her level of antibodies in her complaint are enough basis for an ADA violation reasonably to be expected to grow out of the charge. The information speaks to the ability or dis-ability of her immune system, and is immediately and naturally connected to the issue of the presence of infectious disease. Dr. D'Cunha's original complaint is adequate to support an ADA claim.

## CONCLUSION

The District Court erred in dismissing Dr. D'Cunha's complaint. It applied a disparate impact analysis when a failure to accommodate analysis was appropriate, which accords with her allegations of religious discrimination according to a failure to accommodate theory. Dr. D'Cunha has alleged plausible claims of Northwell's failure to accommodate her religious beliefs. Northwell has not shown an undue hardship.

Dr. D'Cunha experienced discrimination on the basis of her doctor's request for a delay in vaccination because of her pregnancy. Northwell fired her when it was

her pregnancy that caused her to decline the vaccination. She has alleged a colorable claim of pregnancy (sex) discrimination; the District Court's dismissal was inappropriate.

Finally, Northwell, by virtue of its vaccination requirement, signaled that it perceived Dr. D'Cunha to be disabled, and it fired her over its perception of the inadequacy of her immune system's response to COVID-19. This allegation flows naturally from Dr. D'Cunha's original complaint, so she has exhausted her administrative remedies. The District Court's dismissal of this count was inappropriate.

Dated: May 31, 2023                              Respectfully Submitted,


_/s/ E. Scott Lloyd_
Counsel
E. Scott Lloyd
Lloyd · Lemmon, PLLC
Va. Bar # 76989
15 Chester Street
Front Royal, VA 22630
(540)631-4081
scott@lloydlemmon.com
Counsel for the Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Fed.R.App.P.32(a)(7)(B) because:

   This brief contains 5,336 words, excluding the parts of the brief exempted by Fed.R.App.32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed.R.App.P.32(a)(5) and the type style requirements of Fed.R.App.P32(a)(6) because:

   This brief has been prepared in Proportionally-Space typeface using Microsoft Word, in Garamond, Font Size 14.