# 23-0476-cv

# United States Court of Appeals

*for the*

# Second Circuit

CANDICE D'CUNHA,

*Plaintiff-Appellant,*

– v. –

NORTHWELL HEALTH SYSTEMS,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

DANIEL GOMEZ-SANCHEZ
LITTLER MENDELSON P.C.
*Attorneys for Defendant-Appellee*
290 Broadhollow Road, Suite 305
Melville, New York 11747
(631) 247-4700

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant and Appellee Northwell Health, Inc., incorrectly sued herein as Northwell Health Systems, by and through its undersigned counsel of record, hereby certifies that Northwell Health, Inc. does not have a corporate parent, and no publicly held corporation owns 10% or more of Northwell Health, Inc.'s stock.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ iii

I.      STATEMENT OF JURISDICTION ............................................. 1

II.     COUNTER-STATEMENT OF ISSUE PRESENTED ................... 1

III.    COUNTER-STATEMENT OF THE CASE .................................. 2

        A.      The New York State COVID-19 Vaccine Mandate For
                Healthcare Workers ........................................................ 2

        B.      Relevant Allegations in Plaintiff-Appellant's Amended
                Complaint ........................................................................ 4

IV.     SUMMARY OF THE ARGUMENT ........................................... 8

V.      ARGUMENT .............................................................................. 10

        A.      The District Court Correctly Dismissed Plaintiff-Appellant's
                Claim Under Title VII For Failure To Accommodate Religion
                Because It Fails To Plausibly State a Claim ....................... 10

                1.      Standards Applicable to Plaintiff-Appellant's Religious
                        Accommodation Claims ......................................... 11

                2.      Plaintiff's Request to Be Exempt From the Mandate
                        For Healthcare Workers is Foreclosed By *We the
                        Patriots USA, Inc. v. Hochul* ................................ 13

                3.      Plaintiff's Request to Be Exempt From the Mandate
                        For Healthcare Workers Would Have Worked an
                        Undue Hardship on Defendant-Appellee .............. 16

                        a.      Violation of Law ........................................ 16

                        b.      Health and Safety Threat .......................... 18

        B.      The District Court Correctly Dismissed Plaintiff-Appellant's
                Sex/Pregnancy Discrimination Claim Under Title VII For
                Failure To Plausibly State A Claim .................................. 22

                1.      Plaintiff Failed to Plausibly Allege That She Was
                        Terminated *Because of* Her Pregnancy ............... 22

2.    Plaintiff-Appellant Failed to Plausibly Allege That She Was Treated Less Favorably Than Non-Pregnant Employees Similar in Their Ability or Inability to Work ........................................................................23

C.    The District Court Correctly Dismissed Plaintiff-Appellant's Disability Discrimination Claim (ADA) .............................................25

1.    Plaintiff-Appellant Failed to Exhaust Her Administrative Remedies ..........................................................25

2.    Plaintiff-Appellant Failed to Plausibly Allege That She Was Perceived As Disabled Based on Her Unvaccinated Status ................................................................28

3.    Plaintiff-Appellant Failed to Plausibly Allege That She Was Qualified For Her Position ...............................................30

VI.    CONCLUSION .............................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Allianz Ins. Co. v. Lerner*,
  416 F.3d 109 (2d Cir. 2005) ...............................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................8

*Baker v. The Home Depot*,
  445 F.3d 541 (2d Cir. 2006) ................................................... 11-12, 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................8

*Biden v. Missouri,*
  142 S. Ct. 647 (2022).........................................................................21

*Brady v. Wal-Mart Stores, Inc.,*
  531 F.3d 127 (2008) ...........................................................................30

*Brown v. Coach Stores, Inc*.,
  163 F.3d 706 (2d Cir. 1998) ..............................................................25

*Corrales v. Montefiore Med. Ctr.*,
  No. 22-CV-3219, 2023 WL 2711415 (S.D.N.Y. March 30, 2023) .....17

*Cosme v. Henderson*,
  287 F.3d 152 (2d Cir. 2002) ..............................................................11

*Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C*.,
  No. 22-CV-2929, 2023 WL 3467143 (S.D.N.Y May 15, 2023)....... 13, 17, 18, 20

*Deravin, III v. Kerik*,
  335 F.3d 195 (2d Cir. 2003) ..............................................................25

*Does 1-2 v. Hochul,*
  -- F. Supp. 3d --, 2022 WL 4637843 (S.D.N.Y Sept. 30, 2022) ................. *passim*

*Earl v. Good Samaritan Hosp. of Suffern*,
  No. 20-cv-3119, 2021 WL 4462413 (S.D.N.Y. Sept. 28, 2021)..........29

*EEOC v. Bloomberg L.P.*,
   967 F. Supp. 2d 802 (S.D.N.Y. 2013) ....................................................24

*EEOC v. STME, LLC*,
   938 F.3d 1305 (11th Cir. 2019) ............................................................28

*Frederick v. Hampshire*,
   2015 D.N.H. 187 (D.N.H. 2015) ..........................................................23

*Groff v. Dejoy*,
   2023 U.S. Lexis 2790 (2023) ...................................................... 12, 16

*Henry v. County of Nassau*,
   6 F.4th 324 (2d Cir. 2021) .....................................................................8

*Hopkins Hawley LLC v. Cuomo*,
   No. 20-CV-10932, 2021 WL 1894277 (S.D.N.Y. May 11, 2021)........................3

*Jorgenson v. Conduent Transp. Sols., Inc.*,
   No. 22-cv-1648, 2023 WL 1472022 (D. Md. Feb. 2, 2023), *aff'd*
   2023 WL 4105705 (4th Cir. June 21, 2023).........................................29

*Kalsi v. NYC Transit Auth.*,
   62 F. Supp. 2d 745 (E.D.N.Y. 1998), *aff'd* 189 F.3d 461 (2d Cir. 1999)...........19

*Knight v. Conn. Dept. of Pub. Health*,
   275 F.3d 156 (2d Cir. 2001) ................................................................11

*L.T. v. Zucker*,
   No. 21-CV-1034, 2021 WL 4775215 (N.D.N.Y. Oct. 13, 2021) ........................3

*Lenzi v. Systemax, Inc.*,
   944 F.3d 97 (2d Cir. 2019) ...................................................... 22, 23, 24

*Lowman v. NVI LLC*,
   821 Fed. App'x 29 (2d Cir. 2020) .............................................. 17, 18

*Marte v. Montefiore Med. Ctr.*,
   No. 22-CV-03491-CM, 2022 WL 7059182 (S.D.N.Y. Oct. 12, 2022)...............17

*Martinez v. N.B.C., Inc.*,
   49 F. Supp. 2d 305 (S.D.N.Y. 1999) ...................................................26

*Mathie IV v. Goord*,
   267 Fed. App'x 13 (2d Cir. 2008) .......................................................14

*Mira v. Argus Media*,
No. 15-cv-9990, 2017 WL 1184302 (S.D.N.Y. Mar. 29, 2017) .........................14

*Pinkard v. New York City Dep't of Educ.*,
No. 11-CV-5540-FM, 2012 WL 1592520 (S.D.N.Y. May 2, 2012) ..................27

*Riley v. N.Y.C. Health & Hosps. Corp.*,
No. 22-cv-2736, 2023 WL 2118073 (S.D.N.Y. Feb. 17, 2023).................... 17-18

*Rinehart v. Lehman Bros. Holdings, Inc.*,
817 F.3d 56 (2d Cir. 2016) .................................................................8

*Robinson v. Children's Hosp. Boston*,
No. 14-10263-DJC, 2016 WL 1337255 (D. Mass. Apr. 5, 2016).......................20

*Sharikov v. Philips Medical Sys. MR, Inc.*,
-- F. Supp. 3d --, 2023 WL 2390360 (N.D.N.Y. Mar. 7, 2023),
*appeal filed* (2d Cir. Mar. 21, 2023).............................................. 29, 30

*Shell v. Burlington N. Santa Fe Ry. Co.*,
941 F.3d 331 (7th Cir. 2019) ...............................................................28

*Shklyar v. Carboline Company*,
No. 4:22 CV 391 RWS, 2022 WL 2867073 (E.D. Mo. July 21, 2022),
*aff'd* 2023 WL 1487782 (8th Cir. Feb. 3, 2023) ..................................29

*Speaks v. Health Sys. Mgmt., Inc.*,
No. 5:22-CV-00077, 2022 WL 3448649 (W.D.N.C. Aug. 17, 2022)........... 29, 30

*Sulehria v. City of New York*,
670 F. Supp. 2d 288 (2009) .................................................................21

*We the Patriots USA, Inc. v. Hochul et al.*,
17 F.4th 266 (2d Cir. 2021), *cert. denied*,
142 S. Ct. 2569 (2022).................................................................. *passim*

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
127 F. Supp. 3d 156 (S.D.N.Y. 2015) ....................................................3

*Williams v. N.Y.C. Hous. Auth.*,
458 F.3d 67 (2d Cir. 2006) .......................................................... 25, 26

*Young v. United Parcel Serv., Inc.*,
575 U.S. 206 (2015) ...........................................................................24

**Statutes and Other Authorities:**

28 U.S.C. § 1291 ..........................................................................................1

28 U.S.C. § 1331 ..........................................................................................1

42 U.S.C. § 12101 ................................................................................ *passim*

42 U.S.C. § 12102(1)(A) ............................................................................28

42 U.S.C. § 12102(1)(C) ............................................................................28

42 U.S.C. § 12102(3)(B) ............................................................................30

42 U.S.C. § 12117(a) ..................................................................................25

42 U.S.C. § 2000e ............................................................................... *passim*

42 U.S.C. § 2000e(j) ............................................................................ 11, 12

42 U.S.C. § 2000e(k) ........................................................................... 22, 24

42 U.S.C. § 2000e-5(e) ...............................................................................25

48 U.S.C. § 2000e-2(a)(1) ..........................................................................22

29 C.F.R. § 1630.2(m) ................................................................................30

10 N.Y.C.R.R. § 2.61 ...................................................................................2

10 N.Y.C.R.R. § 2.61(a)(2) ........................................................... 2, 5, 9, 18

10 N.Y.C.R.R. § 2.61(d)(1) .....................................................................2, 24

Fed. R. Civ. P. 12(b)(6) ..................................................................... *passim*

Fed. R. Evid. 201 ..........................................................................................3

## I.     STATEMENT OF JURISDICTION

The District Court had "federal question" subject matter jurisdiction over Plaintiff-Appellant's claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., as claims arising out of the laws of the United States. *See* 28 U.S.C. § 1331.

Appellate jurisdiction in this Court is based on 28 U.S.C. § 1291, as Plaintiff-Appellant appeals from a final decision of the District Court dismissing her Amended Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). (JA-7).[1] Specifically, Plaintiff-Appellant appeals from the Order, dated February 28, 2023, of the Honorable Mary Kay Vyskocil, United States District Judge for the Southern District of New York, which granted Defendant-Appellee's[2] Motion to Dismiss with prejudice. (JA-163-173).

## II.     COUNTER-STATEMENT OF ISSUE PRESENTED

Did the District Court err in dismissing Plaintiff-Appellant's Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)?

---

[1] References to JA- are to the Joint Appendix, Dkt. No. 34.
[2] Plaintiff-Appellant Northwell Health, Inc., is incorrectly sued herein as Northwell Health Systems.

## III.  COUNTER-STATEMENT OF THE CASE

### A.  The New York State COVID-19 Vaccine Mandate For Healthcare Workers

On August 26, 2021, the State of New York issued an emergency regulation (the "Mandate") requiring COVID-19 vaccination for covered "personnel" in the healthcare industry.  *See* 10 N.Y.C.R.R. § 2.61.  The Mandate defined covered "personnel" to include "all persons employed [by] a covered entity . . .who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease."  *Id*. § 2.61(a)(2).  The Mandate exempts from vaccination covered personnel for whom "immunization with [the] COVID-19 vaccine is detrimental to [their] health . . . based upon a pre-existing health condition."  *Id*. § 2.61(d)(1).  The Mandate requires that any medical exemption request must be supported with a certification by a licensed physician or certified nurse practitioner issued in accordance with generally accepted medical standards, including recommendations of the Advisory Committee on Immunization Practices ("ACIP") of the U.S. Department of Health and Human Services. *Id.*  The Mandate did *not* include a religious exemption.[3]

---

[3] There was some initial uncertainty about whether the Mandate would include a religious exemption.  On August 18, 2021, then-New York State Health Commissioner Howard Zucker issued a short-term "Order for Summary Action" that, unlike the ultimate Mandate, required COVID-19 vaccinations for covered personnel in the healthcare industry, but included medical *and* religious exemptions.  *See Does 1-2 v. Hochul,* -- F.Supp.3d --, 2022 WL 4637843, *2 (S.D.N.Y Sept. 30, 2022).  The ultimate August 26, 2021 Mandate did not include the religious exemption component. *Id.* at *3. *See* 10 N.Y.C.R.R. § 2.61.

The Regulatory Impact Statement issued with the Mandate explained that the emergency rulemaking was necessary due to "significant public health threat" caused by the increasing circulation of the Delta variant of the COVID-19 virus. *See We the Patriots USA, Inc. v. Hochul et al*., 17 F.4th 266, 274 (2d Cir. 2021) (summarizing Regulatory Impact Statement). Based on ample data, including the fact "that unvaccinated individuals are approximately 5 times as likely to be diagnosed with COVID-19 compared to vaccinated individuals" and "[t]hose who are unvaccinated have over 11 times the risk of being hospitalized with COVID-19," the statement concluded that "[u]nvaccinated personnel in [healthcare] settings have an unacceptably high risk of both acquiring COVID-19 and transmitting the virus to colleagues and/or vulnerable patients or residents, exacerbating staffing shortages, and causing unacceptably high risk of complications." *Id*.[4]

In an opinion dated November 4, 2021, this Court upheld the Mandate against several constitutional challenges asserted by healthcare workers who were terminated from employment based on their refusal to get vaccinated for purported

---

[4] The Court may take judicial notice of documents retrieved from public sources and facts regarding COVID-19, like those referenced herein. *See Hochul,* 2022 WL 4637843, *1 n.1; *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F.Supp.3d 156, 166 (S.D.N.Y. 2015) (court may judicially notice "documents retrieved from official government websites"); *L.T. v. Zucker*, No. 21-CV-1034, 2021 WL 4775215, *1 n.3 (N.D.N.Y. Oct. 13, 2021) ("The Court takes judicial notice of facts regarding the spread and lethality of COVID-19 as reported by dependable public health authorities."); *Hopkins Hawley LLC v. Cuomo*, No. 20-CV-10932, 2021 WL 1894277, *2 n.2 (S.D.N.Y. May 11, 2021) ("Under Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of facts that are generally known within the trial court's territorial jurisdiction. . . . General facts regarding the COVID pandemic indisputably fall within Rule 201's purview.")

religious reasons.  *See We the Patriots USA, Inc. v. Hochul et al*., 17 F.4th 266 (2d Cir. 2021) *cert. denied,* 142 S. Ct. 2569 (2022).  In relevant part, this Court rejected the argument that the Mandate contravened the Supremacy Clause by prohibiting healthcare entities from providing religious accommodations as provided by Title VII, reasoning that the Mandate does not foreclose the opportunity to secure a reasonable accommodation under Title VII.  *Id.* at 292.  In a subsequent clarifying opinion, this Court explained that its holding meant that the only religious accommodation that could be granted was to employ subject employees in a manner that removed them from the regulation's definition of covered "personnel."  *See We the Patriots USA, Inc. v. Hochul et al*., 17 F.4 368, 370-71 (2d Cir. 2021).  Thus, to remain in compliance, a healthcare entity could only grant a religious accommodation if it removed the employee from working in a position where they could potentially expose other personnel, patients or residents to COVID-19.  *Id*.  This Court also held that "[v]accination is a *condition of employment* in the healthcare field."  *We the Patriots*, 17 F.4th at 294 (emphasis added).

**B.    Relevant Allegations in Plaintiff-Appellant's Amended Complaint**

As alleged in the Amended Complaint, on June 22, 2020, Plaintiff-Appellant Candice D'Cunha ("Plaintiff-Appellant" or "D'Cunha") began her podiatric residency at Staten Island University Hospital, a facility of Defendant-Appellee Northwell Health Systems ("Defendant-Appellee" or "Northwell").  (JA-9-10, ¶¶

11, 17). Plaintiff-Appellant was pregnant when she began her residency and gave birth in October 2020. (JA-10, ¶ 19). On August 2, 2021, consistent with the state Mandate, Defendant-Appellee announced that employees were required to receive a COVID-19 vaccine or receive a religious[5] or medical exemption by September 27, 2021 or face termination. (JA-10, ¶ 22; JA-17-18). Appellant became pregnant again in or around September of 2021, with an estimated due date of March 2022. (JA-23). Plaintiff-Appellant was a resident learning and training at the Hospital on how to be a doctor and provide direct medical care to patients. (JA-9-10). Accordingly, as a resident, she was employed in a position providing direct patient care and/or having direct contact with the general public, and thus "could potentially expose other covered personnel, patients or residents to the disease," meaning she was in a covered "personnel" position requiring her to be vaccinated under the Mandate. (JA-9-10, ¶¶ 11, 17; JA-35-36; *see* 10 N.Y.C.R.R. § 2.61(a)(2).)

On September 3, 2021, Plaintiff-Appellant submitted a request for a religious accommodation[6] on the basis of her professed Catholic beliefs. (JA-11, ¶ 26; JA-17-20). On September 9, 2021, Plaintiff-Appellant also submitted a request for a medical exemption. (JA-11, ¶ 28; JA-21-23). The request for medical

---

[5] As noted above, the short-term "Order for Summary Action" issued August 18, 2021 *did* provide for religious exemptions. *See* fn. 3, *supra*.

[6] Notably, JA-17-20 contains a completed form by Plaintiff-Appellant entitled "COVID-19 Vaccination – Religious Accommodation Request Form." (JA-17-20).

accommodation attached lab results purporting to reflect a heightened COVID-19 antibody count and a note from her physician requesting to "delay[] vaccine administration to after delivery" of her current pregnancy with no reason provided. (JA-21-23). Defendant-Appellee ultimately denied Plaintiff-Appellant's requests for religious and medical exemptions. (JA-11, ¶¶ 26-34.)

Plaintiff-Appellant's denial of her religious accommodation explained that the state Mandate issued on August 26, 2021 excluded religious exemptions. (JA-35). However, the notice also stated that due to uncertainty surrounding legal challenges, Defendant-Appellee nevertheless reviewed and considered whether she would be eligible for religious accommodation and concluded that her request was denied because to grant the request would create an "undue hardship." (JA-35-36). It stated: "Specifically, we have determined that permitting you, as an unvaccinated team member, to report to your worksite that provides direct patient care and/or has direct contact with the general public poses an unacceptable health and safety threat to patients, coworkers, and visitors." (*Id.*) Defendant-Appellee was further advised that there "is no alternative arrangement that can be made that would allow you to perform the essential functions of your position while unvaccinated without creating an undue hardship." (*Id.*)

Plaintiff-Appellant's medical exemption request was denied because her "stated reason for a medical exemption is not a contraindication to COVID-19

vaccination." (JA-30-33). Thus, having failed to obtain the COVID-19 vaccine, Plaintiff-Appellant's employment was terminated for failing to comply with the vaccine Mandate. (JA-12-13, ¶¶ 35-39; JA-37-39, 48, 143-153).

On October 26, 2021, Plaintiff-Appellant filed an administrative Charge of Discrimination (the "Charge") alleging religious and sex discrimination. She did not allege disability discrimination. (JA-13, ¶ 42; JA-161-162). On November 5, 2021, the United States Equal Employment Opportunity Commission ("EEOC") issued Plaintiff-Appellant a Notice of Right to Sue. (JA-13, ¶ 43; JA-154-155).

On February 3, 2022, Plaintiff initiated the underlying matter by filing a Complaint in the Southern District of New York. (JA-1). On February 24, 2022, Plaintiff filed an Amended Complaint. (JA-3). On May 2, 2022, Defendant-Appellee filed a letter motion requesting a pre-motion conference to discuss its anticipated bases to dismiss Plaintiff's Amended Complaint. (JA-3). On May 5, 2022, Plaintiff filed her response. (JA-4). On May 10, 2022, the Court denied Defendant-Appellee's request for a pre-motion conference and granted Defendant's leave to file its motion to dismiss. (JA-4). The parties subsequently filed their respective opposition, reply, and supplemental briefings. (JA-4-5). On February 28, 2023, the Court granted Defendant-Appellee's motion to dismiss with prejudice and marked the case closed. (JA-5).

On March 30, 2023, Plaintiff-Appellant filed her Notice of Appeal. (JA-5).

## IV.  SUMMARY OF THE ARGUMENT

The District Court's decision to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) is reviewed *de novo*.  *Rinehart v. Lehman Bros. Holdings*, *Inc.*, 817 F.3d 56, 63 n.2 (2d Cir. 2016); *Henry v. County of Nassau*, 6 F.4th 324, 328 (2d Cir. 2021).  To avoid dismissal for failure to state a claim under Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and there must be "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is not facially plausible unless "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff-Appellant repeatedly asserts in her brief that she has stated a "colorable" claim under Title VII and the ADA, (Dkt. No. 33, at 7 & 27), which is *not* the standard ever since the Supreme Court adopted the plausibility standard set forth in *Iqbal* and *Twombly*.

The District Court here properly dismissed all claims asserted by Plaintiff-Appellant in her Amended Complaint. Plaintiff-Appellant, who was indisputably employed in a direct patient-facing role and as part of her residency program was learning how to provide direct patient care, has not raised any viable grounds for reversing that decision.  The District Court properly dismissed the Amended Complaint for various reasons.  First, with respect to the claim for religious

discrimination under Title VII, Plaintiff-Appellant's request to be exempt from New York State's vaccine Mandate for healthcare workers is foreclosed by *We the Patriots USA, Inc. v. Hochul*. *See We the Patriots USA, Inc. v. Hochul et al*., 17 F.4th 266 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2569 (2022). There, the Second Circuit held that vaccination was a condition of employment in the healthcare field, which Plaintiff-Appellant indisputably occupied, and further found that covered entities are barred from granting exemptions from the Mandate on religious grounds. 17 F.4th 266 (2d Cir. 2021), clarified at 17 F.4 368. As explained above, Plaintiff could only be granted an accommodation if Defendant-Appellee could completely remove the Plaintiff-Appellant from her patient-facing role. Indeed, as a training physician, the Defendant-Appellee could not provide any alternative accommodation to the Plaintiff-Appellant that could remove her from "working in a position where they could potentially expose other personnel, patients or residents to [COVID-19]." *See id*. at 274 (citing 10 N.Y.C.R.R. § 2.61(a)(2)). As a result, granting the accommodation would have exacted an undue hardship on Defendant-Appellee by forcing it to violate the law and create incontrovertible health and safety risks by exposing her fellow co-workers and patients to COVID-19.

Second, Plaintiff-Appellant's sex/pregnancy discrimination claim under Title VII was also properly dismissed because she failed to plausibly allege that she was terminated *because of* her sex/pregnancy, or that she received less favorable

treatment than non-pregnant employees "similar in their ability or inability to work." Plaintiff-Appellant's own allegations—namely, that she was terminated because of her refusal to get vaccinated against COVID-19—entirely undermines her claim that she was discriminated against because of her sex/pregnancy.

Third, Plaintiff-Appellant's disability discrimination claim under the ADA was also properly dismissed for failure to exhaust her administrative remedies. In Plaintiff's EEOC Charge, Plaintiff-Appellant only checked the boxes for religious and sex/pregnancy discrimination, and there were no facts or context from which her present disability claim could be deemed related. Moreover, Plaintiff-Appellant's allegation that she was "regarded as" disabled due to her refusal to get vaccinated is legally untenable. Finally, her unvaccinated status also had the consequence of rendering her fundamentally unqualified for her position as a resident physician. These alternative failings also merit dismissal.

## V. ARGUMENT

### A. The District Court Correctly Dismissed Plaintiff-Appellant's Claim Under Title VII For Failure To Accommodate Religion Because It Fails To Plausibly State a Claim.

Plaintiff-Appellant fails to plead *any* facts to demonstrate she was discriminated against because of her alleged religious beliefs. Regardless, her request for an accommodation from the vaccine requirement while working in a patient facing role was properly denied because to grant it would pose an

"unacceptable health and safety threat" to her vulnerable patients, coworkers, and visitors. (JA-35).

### 1. Standards Applicable to Plaintiff-Appellant's Religious Accommodation Claims.

The elements of a religious accommodation claim under Title VII are well-established in the Second Circuit. Pursuant to 42 U.S.C. § 2000e(j), "when an employee has a genuine religious practice that conflicts with a requirement of employment, his or her employer, once notified, must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002), citing *Knight v. Conn. Dept. of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001). In keeping with this principle, plaintiffs must first satisfy the following elements to make out a *prima facie* case: "(1) [t]hey held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and, (3) they were disciplined for failure to comply with the conflicting employment requirement." *Knight*, 275 F.3d at 167. If a plaintiff is able to do so, the burden shifts to the employer to show that it could not provide a reasonable accommodation for the person's religious beliefs without "undue hardship." *Id.* Traditionally, this Circuit has found that "[a]n accommodation is said to cause an undue hardship whenever it results in 'more than a de minimis cost' to the employer." *Baker v. The*

*Home Depot*, 445 F.3d 541, 548 (2d Cir. 2006).[7]

Plaintiff-Appellant argues that the District Court applied the wrong standards to her religious accommodation claim under Title VII. (Dkt. No. 33, Appellant's Br. at 14-18.) However, the District Court considered Plaintiff-Appellant's religious discrimination claim in two ways: (1) as a disparate treatment claim, and (2) as a failure to accommodate claim. (JA-163-168). It now appears that Plaintiff-Appellant is only pursuing a failure to accommodate claim. The District Court correctly considered this claim when it applied Title VII's requirement that employers reasonably accommodate employees' religious beliefs unless doing so works an "undue hardship" on the employer. (*See* ECF No. 32 at 5, citing 42 U.S.C. § 2000e(j) and cases). Plaintiff-Appellant's religious discrimination claim was properly dismissed because the accommodation she sought would have worked an undue hardship on Defendant-Appellee.

---

[7] A recent Supreme Court case, *Groff v. Dejoy*, analyzed the application of Title VII's "*de minimis*" undue hardship standard. *See Groff v. Dejoy*, 2023 U.S. Lexis 2790 (2023). The Court instructed that when an employer is faced with a proposed request for a religious accommodation, any denial must be supported by demonstrating a "substantial" cost to the business beyond the "de minimis" standard, "taking into account all relevant factors . . . and their practical impact." *Id*., at *32-33. Even under the heightened instructions of *Groff*, the District Court's finding that permitting Plaintiff-Appellant to provide direct patient care while unvaccinated would risk "an unacceptable health and safety threat to patients, co-workers and visitors . . . that is 'more than a de minimis cost" (*see* JA at 167-169), and would meet the "substantial" standard described in *Groff*.

**2.     Plaintiff's Request to Be Exempt From the Mandate For Healthcare Workers is Foreclosed By *We the Patriots USA, Inc. v. Hochul.***

Under this Circuit's holding in *We the Patriots*, healthcare entities subject to the Mandate could only provide religious accommodations if they could remove personnel from the scope of the Mandate (*i.e.*, by transferring them to positions that could not potentially expose other personnel, patients or residents to COVID-19), but were otherwise barred from granting exemptions from the Mandate on religious grounds.  17 F.4th 266, 292 (2d Cir. 2021), *clarified at* 17 F.4 368, 370-71. *See Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-CV-2929, 2023 WL 3467143, *5 (S.D.N.Y May 15, 2023) (explaining that under *We the Patriots* the although the Mandate "does not bar an employer from providing an employee with a reasonable accommodation that removes the individual from the scope of the Rule, it does bar religious exemptions"). *See* Section III.A, *supra*.

Plaintiff-Appellant claims that the District Court committed a factual error when it stated that "the only accommodation D'Cunha requested was a vaccine exemption," and "[went] on to mischaracterize *We the Patriots*, stating that the case 'foreclosed' the possibility of a COVID-19 vaccine exemption for Dr. D'Cunha." (Dkt. No. 33, Appellant Br. at 20-21; JA-167).  Plaintiff-Appellant now argues that she was not "insisting on a specific type of accommodation" and could have considered telework or other options.  (Dkt. No. 33, Appellant Br. at 20-21).  Yet,

by so arguing, Plaintiff-Appellant entirely ignores her own pleadings in this case. According to the Amended Complaint, the only accommodation she sought was religious exemption from the Mandate. (JA-11, ¶ 26). Indeed, in Count II of the Amended Complaint, containing the religious discrimination claim, Plaintiff-Appellant states: "In refusing to accommodate Dr. D'Cunha's request for exemption because of her religious beliefs and firing her, Northwell discriminated against her on the basis of religion." (JA-14, ¶ 56). Likewise, Plaintiff-Appellant's brief in opposition to the motion to dismiss never raised any theory that an alternate accommodation was requested. *See* District Court ECF Dkt. No. 25.

Plaintiff-Appellant's attempt to belatedly raise new theories of accommodation in this appeal is improper and must be soundly rejected. *See, e.g.*, *Mathie IV v. Goord*, 267 Fed. App'x 13, 14 (2d Cir. 2008) (affirming that a new constitutional challenge raised in opposition briefing was properly dismissed because the complaint did not "encompass that claim."); *Mira v. Argus Media*, No. 15-cv-9990, 2017 WL 1184302, *3 (S.D.N.Y. Mar. 29, 2017) (declining to review claims raised in a *pro se* plaintiff's opposition briefing because the allegations went "well beyond merely elaborating on the facts alleged in the Complaint and apparently are intended to support new legal theories."). *See Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005) ("[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal").

Plaintiff's pleadings reflect that the only accommodation Plaintiff-Appellant sought was a complete exemption from the Mandate, *i.e.,* the ability to keep working with patients while remaining unvaccinated. Such exemption would only be possible if Plaintiff-Appellant was removed from her patient-facing role in entirety. Importantly, however, and as articulated to Plaintiff-Appellant directly at or around the time of her request, this request was considered and denied, as was any alternative accommodation that could have been granted that would have enabled her to perform the essential functions of her position. Plaintiff was advised that "permitting [Plaintiff-Appellant], as an unvaccinated team member, to report to [her] worksite that provides direct patient care and/or has direct contact with the general public poses an unacceptable health and safety threat to patients, co-workers, and visitors . . . [and] no alternative arrangement can be made that would allow [Plaintiff-Appellant] to perform the essential functions of [her] position while unvaccinated." (JA-35-36.)

The District Court correctly held that *We the Patriots* foreclosed Defendant-Appellee's ability to grant Plaintiff-Appellant a religious exemption under the Mandate, as that was the only accommodation request at issue in this litigation. *See, e.g, Does 1-2 v. Hochul,* -- F.Supp.3d --, 2022 WL 4637843, *17 (S.D.N.Y Sept. 30, 2022) (dismissing Mandate challenge under *We the Patriots* when the plaintiffs did "not allege that they have sought anything other than a complete exemption . . . while

continuing to work directly with patients, elderly people and co-workers. They have not, for example, asked for reassignment to a position in which they would be not interact directly with patients, elderly nursing home residents or other healthcare workers"). The essential functions of Plaintiff's role as a resident requires that she work directly with patients and co-workers. Thus, she could not be granted any alternative accommodation outlined in *Hochul*. *See We the Patriots USA, Inc. v. Hochul et al.*, 17 F.4th 268, 370-371 (2d Cir. 2021).

### 3. Plaintiff's Request to Be Exempt From the Mandate For Healthcare Workers Would Have Worked an Undue Hardship on Defendant-Appellee.

Based on the facts alleged, incontrovertible facts surrounding COVID-19 at the relevant time, and the state of the law all as described above, Defendant-Appellee could not have granted Plaintiff-Appellant a religious exemption or alternative accommodation without sustaining significant undue hardship. As outlined above, undue hardship arises any time the requested accommodation would result in "more than a *de minimis* cost to the employer." *Baker*, 445 F.3d at 548. Similarly, an undue hardship would arise even under the Supreme Court's *Groff* decision. *See Groff v. Dejoy*, 2023 U.S. Lexis 2790 (2023).

### a. Violation of Law

As set forth above, the language of the Mandate and holding in *We the Patriots* make it abundantly clear that Defendant-Appellee would have been in direct

violation of New York law if it accommodated Plaintiff-Appellant from the Mandate's vaccination requirement by allowing her to continue working and performing the essential functions of her position while unvaccinated. Quite logically, undue hardship arises if an employer would have to violate the law in order to grant the accommodation sought. *See Lowman v. NVI LLC*, 821 Fed. App'x 29, 32 (2d Cir. 2020) (affirming dismissal of a Title VII complaint when the requested religious accommodation would cause an employer undue hardship by forcing it to violate the law).

Where, as here, "[t]he sole 'accommodation' the plaintiff[] seek[s] – a religious exemption from the vaccine requirement – would impose an undue hardship on [the employer] because it would require them to violate state law," any such claim is subject to dismissal. *Hochul*, 2022 WL 4637843, *15. *See Marte v. Montefiore Med. Ctr.*, No. 22-CV-03491-CM, 2022 WL 7059182, *4 (S.D.N.Y. Oct. 12, 2022) (dismissing healthcare worker's Title VII religious discrimination claim because the accommodation sought—exemption from the Mandate—would have imposed undue hardship by forcing employer to violate the law); *Corrales v. Montefiore Med. Ctr.*, No. 22-CV-3219, 2023 WL 2711415, **7-8 (S.D.N.Y. March 30, 2023) (same); *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-CV-2929, 2023 WL 3467143, **5-7 (S.D.N.Y May 15, 2023) (same); *Riley v. N.Y.C. Health & Hosps. Corp.*, No. 22-cv-2736, 2023 WL 2118073, *4 (S.D.N.Y.

Feb. 17, 2023) (same, noting "Title VII cannot be used to require employers to break the law").[8]

Notably, Plaintiff-Appellant's brief does not address the state-issued Mandate and its obvious impact on Defendant-Appellee's decision-making. There is no question, however, that Defendant-Appellee would have violated the law, which required healthcare facilities to "ensure that . . . covered personnel, were vaccinated against COVID 19," (*See* ECF No. 23 at 1-2, citing 10 NYCRR § 2.61(a)(2)), if it exempted Plaintiff-Appellant from the Mandate. As a result, the District Court's dismissal of Plaintiff-Appellant's religious accommodation claim was appropriate and necessary on the grounds of undue hardship.

### b. Health and Safety Threat

As correctly set forth in the District Court's decision, (JA-167-168), granting Plaintiff-Appellant's request to be exempt from the Mandate would have worked an undue hardship on Defendant-Appellee for a separate and independently valid reason: the unacceptable health and safety threat posed by allowing unvaccinated healthcare workers to remain working in patient-facing roles constitutes more than *de minimis* or "substantial" burden. When, as here, "the proposed accommodation threatens to compromise safety in the workplace, the employer's burden of

---

[8] As reflected in these dismissals, the affirmative defense of undue hardship may be raised in a Rule 12(b)(6) motion to dismiss when the facts establishing it are "clear from the face of the complaint." *Dennison v. Bon Secours Charity Health Sys. Med. Grp, P.C.,* No. 22-CV-2929, 2023 WL 3467143, *5 (S.D.N.Y May 15, 2023). *See also Lowman*, 821 Fed. App'x at 32.

establishing an undue burden is light indeed." *Kalsi v. NYC Transit Auth.*, 62 F.Supp.2d 745, 758 (E.D.N.Y. 1998), *aff'd* 189 F.3d 461 (2d Cir. 1999). "[S]afety considerations are highly relevant in determining whether a proposed accommodation would produce an undue hardship on the employer's business." *Id.* (citation omitted). Yet here, Plaintiff-Appellant merely argues that the District Court erred by accepting the Defendant-Appellee's health and safety rationale as the basis for finding undue burden, arguing that the "alleged hardship remains a hypothetical." (*See* Dkt. 33, Appellant Br. at 19). This argument is unpersuasive and unfounded.

Importantly, Defendant-Appellee did not wholly rely upon the Mandate's bar on religious exemptions in denying the exemption request. Rather, it reviewed the request even though it was not permitted under the Mandate. In doing so, it applied the religious accommodation analysis apart from the effect of the Mandate, and still concluded that granting the request would work an undue hardship due to undeniable health and safety risks by permitting a resident doctor to treat patients (as clearly reflected in Plaintiff-Appellant's pleadings). (JA-35-36).

As noted above, the existence of an undue hardship is a valid basis for granting a Rule 12(b)(6) motion to dismiss. *See* Section V.A.3.a & fn. 7 *supra*. In particular, this includes cases where the undue hardship stem from health and safety risks associated with healthcare workers who refuse vaccination against COVID-19. In *Does 1-2 v. Hochul*, for instance, the District Court dismissed healthcare workers'

Title VII religious discrimination claim because the accommodation sought—exemption from the Mandate—would have imposed undue hardship by forcing the employer to violate the law *and* because it would "expose vulnerable patients and nursing home residents, as well as other healthcare workers, to the COVID-19 virus, which is *obviously a significant hardship*." 2022 WL 4637843, **15-16 (emphasis added).[9] The *Dennison* Court applied the same rationale in dismissing based on undue hardship. *See* 2023 WL 3467143, *6 fn. 7 ("Aside from the State Mandate, there is also the obvious hardship associated with the increased health and safety risk posed to other employees and patients by allowing Plaintiffs to remain unvaccinated while working at their respective facilities.").

The Court may take judicial notice of facts regarding COVID-19 as reported by dependable public health authorities (*see* fn. 3, *supra*), and the vaccination of healthcare workers has been critical to controlling COVID-19 transmission in healthcare facilities and protecting vulnerable patients and other populations. *See, e.g.*, *Hochul*, 2022 WL 4637843, *2 (outlining bases for "the consensus of reliable public health authorities that the COVID-19 vaccine prevents the spread of the virus"

---

[9] As yet an additional example of undue hardship, the *Hochul* Court noted the very real threat of legal liability that might result from instances where patients might contract COVID-19 from unvaccinated healthcare workers. 2022 WL 4637843, *16 (noting "the number of lawsuits filed in this District based on COVID-19 deaths in nursing homes" and citing five such lawsuits in the Eastern District). *See also Robinson v. Children's Hosp. Boston*, No. 14-10263-DJC, 2016 WL 1337255, *8 (D. Mass. Apr. 5, 2016) ("Undue hardship can also exist if the proposed accommodation would either cause or increase safety risks or the risk of legal liability for the employer.").

and is particularly critical in healthcare settings). *See also Biden v. Missouri,* 142 S. Ct. 647, 651 (2022) (upholding CMS vaccine mandate based on findings that "vaccination of healthcare workers against COVID–19 was necessary for the health and safety of individuals to whom care and services are furnished" and "data showing that the COVID–19 virus can spread rapidly among healthcare workers and from them to patients, and that such spread is more likely when healthcare workers are unvaccinated.").

Putting aside the scientific data, the District Court correctly found that Plaintiff-Appellant's challenge to the efficacy of vaccination was irrelevant to the undue hardship analysis because employers have "broad discretion" to set job criteria and determine necessary job qualifications. (JA-168). *Sulehria v. City of New York*, 670 F.Supp.2d 288, 309 (2009). Critically, this Court held in *We the Patriots* that "[v]accination [against Covid-19] is a condition of employment in the healthcare field." 17 F.4th, at 294. Plaintiff-Appellant's failure to get vaccinated rendered her squarely unqualified for the job, and, as a result, it would have been indisputable undue hardship for Defendant-Appellee to keep her employed in her position. Based on the foregoing, the District Court correctly dismissed Plaintiff-Appellant's religious accommodation claim based on her fundamental lack of qualification and the undue hardship resulting to Defendant-Appellee.

### B. The District Court Correctly Dismissed Plaintiff-Appellant's Sex/Pregnancy Discrimination Claim Under Title VII For Failure To Plausibly State A Claim.

#### 1. Plaintiff Failed to Plausibly Allege That She Was Terminated *Because of* Her Pregnancy.

In dismissing Plaintiff-Appellant's sex/pregnancy discrimination claim, the District Court correctly found that she failed to plausibly allege that she was terminated "*because of*" her sex. (JA-169). *See also* 48 U.S.C. § 2000e-2(a)(1) (making it unlawful under Title VII to discharge or otherwise discriminate against an individual "because of such individual's . . . sex).[10] The Court found that her bare allegation that "upon information and belief" that other pregnant employees received exemptions was not plausible—if anything, it undermines the theory that Defendant-Appellee routinely discriminated against pregnant employees. (JA-169).

As Plaintiff-Appellant recites in her brief, a plaintiff asserting a pregnancy discrimination claim is subject to the *McDonnell Douglas* burden shifting framework. *See Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019). Accordingly, Plaintiff must establish the following to make a *prima facie* case: (1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she was terminated; and (4) the termination occurred in

---

[10] The Pregnancy Discrimination Act of 1978 ("PDA") amended Title VII to add pregnancy and related conditions to the definition of "sex." *See* 42 U.S.C. § 2000e(k). It also provides: "[W]omen affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." *Id. See* Section VI.B.2, *infra*.

circumstances giving rise to an inference of unlawful discrimination. *Id*. at 401 (internal quotation marks omitted). Here, Plaintiff-Appellant failed to plausibly allege facts to satisfy the second and fourth elements. Namely, Plaintiff-Appellant's admitted refusal to get vaccinated rendered her fundamentally unqualified for her job as a resident physician under this Court's holding in *We the Patriots*. 17 F.4th at 294 ("[v]accination [against Covid-19] is a *condition of employment* in the healthcare field.") (emphasis added). Further, Plaintiff-Appellant alleges *no facts*— plausible or otherwise—that raise an inference that her termination was occasioned *because of* her pregnancy. Instead, it was for the reason she herself alleges—*i.e.,* her refusal to get vaccinated against COVID-19.

### 2. Plaintiff-Appellant Failed to Plausibly Allege That She Was Treated Less Favorably Than Non-Pregnant Employees Similar in Their Ability or Inability to Work.

To the extent that Plaintiff intends to claim that Defendant-Appellee *failed to accommodate* her pregnancy by denying her request to be exempt from the Mandate,[11] there is no affirmative duty to provide special treatment or accommodate pregnancy itself. *See Frederick v. Hampshire*, 2015 DNH 187, 15 (D.N.H. 2015) ("The PDA precludes employers from treating pregnancy-related conditions 'less favorably than other medical conditions,' but does not require any affirmative

---

[11] Indeed, in Count I of her Amended Complaint for sex/pregnancy discrimination, Plaintiff-Appellant asserts only: "In refusing to accommodate Dr. D'Cunha's request for exemption because of pregnancy and firing her, Northwell discriminated against her on the basis of sex." (JA13-14, ¶ 53.)

accommodations.") Rather, employers must treat pregnant employees the same as non-pregnant employees "similar in their ability or inability to work." *Lenzi*, 944 F.3d at 107 (citing 42 U.S.C. § 2000e(k)); *Young v. United Parcel Serv., Inc.*, 575 U.S. 206 (2015). *See also EEOC v. Bloomberg L.P.*, 967 F.Supp.2d 802, 810 (S.D.N.Y. 2013) ("[T]he PDA does not require the creation of special programs for pregnant women; nor does it mandate any special treatment. To the contrary, the statute specifically requires that pregnant women be treated the same as all other employees with similar disabilities.").

Here, in accordance with the Mandate, Defendant-Appellee reviewed medical exemption requests based on known COVID-19 vaccine safety risks. (JA-30-33). *See also* 10 N.Y.C.R.R. § 2.61(d)(1) (providing medical exemption for health care employees with legitimate pre-existing conditions whose health would be detrimentally impacted by the COVID-19 vaccine, to be determined using generally accepted medical standards). Plaintiff-Appellant, meanwhile, failed to provide a medical reason for the requested exemption, other than pregnancy itself. (JA-21-23). Even her pregnancy doctor's note is devoid of any reason why she would be medically unable to receive the COVID-19 vaccine while pregnant. (JA-23.) Thus, Plaintiff failed to plausibly allege that she received less favorable treatment than non-pregnant employees "similar in their ability or inability to work," and dismissal is appropriate on that basis as well.

**C.    The District Court Correctly Dismissed Plaintiff-Appellant's Disability Discrimination Claim (ADA).**

**1.    Plaintiff-Appellant Failed to Exhaust Her Administrative Remedies.**

The District Court dismissed Plaintiff-Appellant's disability discrimination claim for the initial reason that she failed to exhaust administrative remedies as required by the ADA.  (JA-170-171).  Fundamentally, a plaintiff must file an administrative charge with the EEOC and receive a right to sue letter before filing an ADA claim in federal court.  *See* 42 U.S.C. § 2000e-5(e); 42 U.S.C. § 12117(a).  The District Court lacks jurisdiction over any claim not alleged in the employee's EEOC charge unless it is "reasonably related" to claims that were asserted in the charge.  *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998).  An unasserted claim is only viable if it is "reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made."  *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (citation omitted).  To determine whether such unasserted claim is "reasonably related" to the prior charge allegations, "the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving," *Deravin, III v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (citation and quotation omitted), and "whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate

discrimination on both bases.'" *Williams*, 458 F.3d at 70 (citation omitted).

Here, there are only two boxes checked by Plaintiff on her Charge: "Sex" and "Religion." (JA161-16). Notably, Plaintiff-Appellant had two opportunities to check the "Disability" box when she filled out two separate Charges under the same Charge number, yet she voluntarily chose *not* to check the "Disability" box as a basis for discrimination. (*Id.*) Further, there is nothing in the Charge to suggest that Plaintiff-Appellant was disabled (or perceived as disabled), or that she believed she was discriminated against because of any purported or perceived disability. Rather, she only alleged that she was pregnant (*not* that she had any pregnancy-related condition that would qualify her as disabled),[12] in purported support of checking the box for sex discrimination. (*Id.*) Therefore, there was no reason to believe that any claim for disability discrimination under the ADA would have been investigated by the EEOC.

Tellingly, the Amended Complaint alleges that Plaintiff-Appellant was subjected to discrimination on the basis of a perceived disability as a carrier or potential carrier of an infectious disease due to an impairment in her immunity to COVID-19. (JA-14, ¶ 60). However, none of these allegations are contained in the

---

[12] It is beyond dispute that pregnancy itself is not a disability under the ADA. *See Martinez v. N.B.C., Inc.*, 49 F.Supp.2d 305, 308 (S.D.N.Y. 1999) ("Every court to consider the question to date has ruled that pregnancy and related medical conditions do not, absent unusual conditions, constitute a [disability] under the ADA") (citing cases).

Charge. (JA-161-162). On appeal, Plaintiff-Appellant argues, weakly that the reference to having "antibodies in the highest range" in her Charge that asserts a claim of sex/pregnancy discrimination was enough to form the basis of disability discrimination. (Dk. No. 33, Appellant Br. at 26). This contention makes no sense, as the implication is that her antibody level rendered her immune from COVID-19 and classified her as "disabled" (*i.e.*, the opposite of having an impairment). Certainly, she cannot argue that her allegedly *greater* protection from reinfection impaired her ability to perform any major life activity to make her "disabled."

Thus, Plaintiff-Appellant failed to exhaust her administrative remedies as it relates to her ADA claim. Despite her efforts to otherwise salvage her claims, it is not reasonably related to Plaintiff's EEOC Charge of sex or religious discrimination. *See Pinkard v. New York City Dep't of Educ*., No. 11-CV-5540-FM, 2012 WL 1592520, *8 (S.D.N.Y. May 2, 2012) ("Courts have consistently held that discrimination claims based on age, sex, or disability are not reasonably related to claims based on race or color, and vice versa.") (collecting cases where asserting discrimination based on one protected category did not exhaust claims for discrimination based on another protected category). Therefore, the District Court's dismissal for failure to exhaust administrative remedies was proper.

### 2. Plaintiff-Appellant Failed to Plausibly Allege That She Was Perceived As Disabled Based on Her Unvaccinated Status.

As referenced above, Plaintiff-Appellant alleges that "in refusing to accommodate [her] request for medical exemption and firing her," Defendant-Appellee discriminated against her "on the basis of *perceived disability*—that despite providing a laboratory-confirmed antibody count, she was impaired in her immunity to the disease, and is a carrier or potential carrier of an infectious disease." (JA-14, ¶ 60). In other words, she claims to be "perceived as disabled" because she was unvaccinated, and, thus, more likely to develop COVID-19 in the future. The District Court correctly found that Plaintiff-Appellant failed to plausibly state an ADA claim due to the lack of any facts suggesting she was regarded as having a *present* disability. (JA-171).

In addition to protecting individuals with actual disabilities, the ADA also protects individuals "regarded as having" a qualifying impairment. 42 U.S.C. § 12102(1)(A), (C). Critically, the plain language of this definition protects those perceived as having present impairments, not *future* impairments. *See Shell v. Burlington N. Santa Fe Ry. Co.*, 941 F.3d 331, 336 (7th Cir. 2019) ("The text [of the ADA] plainly encompasses only current impairments, not future ones."); *EEOC v. STME, LLC*, 938 F.3d 1305, 1315 (11th Cir. 2019) (definition inapplicable "where an employer perceives a person to be presently healthy with only a potential to become ill and disabled in the future").

-28-

The Northern District of New York recently dismissed an ADA claim involving a plaintiff who refused to comply with his employer's vaccine mandate using a similar "regarded as" theory. *Sharikov v. Philips Medical Sys. MR, Inc*., -- F.Supp.3d --, 2023 WL 2390360 (N.D.N.Y. Mar. 7, 2023), *appeal filed* (2d Cir. Mar. 21, 2023). There, plaintiff claimed he was regarded as disabled based on the allegation that, due to his unvaccinated status, his employer regarded him as either having COVID-19 or being prone to getting infected with COVID-19. *Id.* at *7. In dismissing under Rule 12(b)(6), the Court reasoned that "[t]he allegation that Defendant perceived Plaintiff as potentially infectious fails to plausibly allege a claim that the Defendant regarded Plaintiff as having an impairment."[13] *See also Earl v. Good Samaritan Hosp. of Suffern*, No. 20-cv-3119, 2021 WL 4462413, *6 (S.D.N.Y. Sept. 28, 2021) (finding that the plaintiff "failed to plausibly allege that [his employer] perceived him to be disabled based on his potential to infect patients with COVID-19" because the "perception of infectiousness is not the same as perceived disability"). Further, even if potential infection with COVID was sufficient, infection with COVID-19 is still insufficient to state a "regarded as" claim

---

[13] The Court cited several other instances of district courts dismissing ADA claims where unvaccinated employees alleged they were "regarded as" disabled. *See Sharikov*, 2023 WL 2390360, **7-8 (citing cases). *See e.g., Shklyar v. Carboline Company*, No. 4:22 CV 391 RWS, 2022 WL 2867073 (E.D. Mo. July 21, 2022), *aff'd* 2023 WL 1487782 (8th Cir. Feb. 3, 2023); *Jorgenson v. Conduent Transp. Sols., Inc*., No. 22-cv-1648, 2023 WL 1472022 (D. Md. Feb. 2, 2023), *aff'd* 2023 WL 4105705 (4th Cir. June 21, 2023); *Speaks v. Health Sys. Mgmt., Inc*., No. 5:22-CV-00077, 2022 WL 3448649 (W.D.N.C. Aug. 17, 2022).

because it is transitory in nature (lasting less than six months). *Sharikov*, 2023 WL 2390360, **7-8; 42 U.S.C. § 12102(3)(B).

Ultimately, Plaintiff-Appellant is trying to wrangle the fact that she was unvaccinated into the legal definition of disability under the ADA. But being unvaccinated is not a "disability" or a "perceived disability." It is a personal choice. As the Western District of North Carolina aptly states in *Speaks*, *see* fn. 8, *supra*, "[r]efusing to get a vaccine required by an employer is not itself an 'impairment' of any sort. Rather, it reflects a personal choice by [plaintiff] that, while hers to make in this context, cannot be considered an impairment under the ADA." 2022 WL 3448649, *5. Because Plaintiff-Appellant failed to plausibly allege a perceived disability, dismissal on that basis also was proper.

### 3. Plaintiff-Appellant Failed to Plausibly Allege That She Was Qualified For Her Position.

Finally, as the District Court correctly noted, Plaintiff-Appellant's disability discrimination claim is subject to dismissal because she did not plausibly allege that she was qualified for her position. (JA-172). *See also Brady v. Wal-Mart Stores, Inc.,* 531 F.3d 127 (2008) (plaintiff must establish she is a qualified individual with a disability to state claim for disparate treatment or failure to accommodate under the ADA). The term "qualified," means that the individual "satisfies the requisite . . . job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential

functions of such position." 29 C.F.R. § 1630.2(m).

Again, Plaintiff-Appellant's admitted refusal to get vaccinated rendered her fundamentally unqualified for her job as a resident physician under this Court's holding in *We the Patriots*. 17 F.4th at 294 ("Vaccination [against Covid-19] is a *condition of employment* in the healthcare field.") (emphasis added). As set forth above, permitting Plaintiff-Appellant to remain working as a resident physician would have worked an undue hardship on Defendant-Appellee due to the incontrovertible health and safety risks to its patients and others. *See* Section VI.A.3.b, *supra*. Thus, dismissal based on the alternative ground of Plaintiff-Appellant's lack of qualification was proper.

## VI. CONCLUSION

Based on the foregoing, the judgment of the District Court should be affirmed.

Dated: Melville, New York  
       July 12, 2023

LITTLER MENDELSON, P.C.

By:*/s/ Daniel Gomez-Sanchez*  
     Daniel Gomez-Sanchez  
     dsgomez@littler.com  
     290 Broadhollow Road  
     Suite 305  
     Melville, NY  11747  
     Telephone:  631.247.4700  
     Facsimile:  631.293.4526

Attorneys for Defendant-Appellee  
Northwell Health Systems

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

- ❑ this brief contains 7,385 words, excluding the parts of the brief exempted by Fed. R. App. P.32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

- ❑ this brief has been prepared in a proportionally spaced typeface using 14 point, Times New Roman font.

*/s/ Daniel Gomez-Sanchez*
    Daniel Gomez-Sanchez

Attorney for:          Northwell Health, Inc.

Dated:          July 12, 2023